# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| MITCHELL GOODBAR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     No. 09-2553 |
| | ) |
| TECHNICOLOR VIDEOCASSETTE OF | ) |
| MICHIGAN, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is the August 31, 2010 Motion for Summary Judgment filed by Defendant Technicolor Videocassette of Michigan, Inc. ("Technicolor"). (Def. Technicolor Videocassette of Michigan, Inc.'s Mot. for Summ. J., ECF No. 22.) ("Def.'s Mot.") Plaintiff Mitchell Goodbar ("Goodbar") responded on October 21, 2010. (Answer to Def.'s Mot. for Summ. J., ECF No. 26) ("Pl.'s Resp."). Technicolor filed a reply on December 6, 2010. (Def. Technicolor Videocassette of Michigan, Inc.'s Reply in Supp. of its Summ. J. Mot., ECF No. 29).

Goodbar alleges that Technicolor's termination of his employment violated his rights under (1) the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. T.C.A. § 4-21-401, (2) the Tennessee Disability Act ("TDA"), Tenn. Code Ann. § 8-50-103

(2008),[1] and (3) Tennessee common law prohibiting retaliatory discharge for filing a workers' compensation claim. (Compl. ¶¶ 1, 13, ECF No. 1-1.) For the following reasons, Technicolor's Motion for Summary Judgment on Goodbar's claims is GRANTED. Technicolor's request to strike Goodbar's response to Technicolor's Statement of Undisputed Material Facts is GRANTED to the extent Goodbar's responses do not comply with the Local Rules.

## I.   Factual Background[2]

This dispute arises from Technicolor's termination of Goodbar's employment. In May 2004, Goodbar began working for Technicolor. (Def. Technicolor Videocassette of Michigan, Inc.'s Local Rule 7.2(d)(2) Statement of Undisputed Material Facts ¶ 1, ECF No. 22-1.) ("Def.'s Statement of Facts") He was hired as a maintenance technician and performed a variety of tasks at Technicolor's Memphis facility, including preventative maintenance, carpentry, welding and grinding metal to fabricate guardrails, and repairing damaged doors, walls, and hardware. (Id. ¶¶ 1, 4, 5, 7.) His immediate supervisor was Kenneth Cole

---

[1] In his Complaint, Goodbar states that his claim is based on the THRA, the Tennessee Handicap Act, and Tennessee common law prohibiting retaliatory discharge. (Compl. ¶ 1, ECF No. 1-1.) The Tennessee Handicap Act is now called the Tennessee Disability Act. See Tenn. Code Ann. § 8-50-103(a). In Goodbar's response, he argues a cause of action under the Tennessee Disability Act, not the Tennessee Handicap Act. (See Pl.'s Resp. 1.)
[2] Unless otherwise stated, all facts in this Part are undisputed for purposes of Technicolor's Motion for Summary Judgment.

("Cole"), who remained his supervisor throughout his employment at Technicolor. (See id. ¶¶ 9, 17, 57-59, 61.)

Around the time Goodbar began working at Technicolor, he signed a copy of Technicolor's Substance Abuse Policy, which provided in part that Technicolor could require him to be screened for drugs whenever he had an on-the-job accident or injury requiring medical attention. (See id. ¶ 25.)

In February 2005, Goodbar was promoted to second shift maintenance lead. (Id. ¶ 12.) He became responsible for supervising maintenance work performed by other employees and creating preventative maintenance programs. (See id. ¶¶ 14-16.) Around August 2007, Cole promoted Goodbar to Safety Champion, and Goodbar became responsible for identifying and fixing safety hazards and serving as a first responder to safety incidents at Technicolor's facility. (See id. ¶¶ 17-20.)

During Goodbar's employment at Technicolor, he had health problems. (See id. ¶¶ 28-33.) He suffered from thyroid disease, stress tension disorder, and pain in his knee. (See id.) Cole was aware of Goodbar's health problems. (See id. ¶¶ 28-29, 34, 36.) A doctor performed surgery on Goodbar's knee on February 15, 2005. (Id. ¶ 31.) That surgery required Goodbar to miss two or three weeks of work. (See id. ¶ 32-33.) After he returned to work, he advised Cole that he had been prescribed hydrocodone, a pain medication, and Cole told him that he could

take hydrocodone and perform his job sitting down. (See id. ¶¶ 34, 36.) A few weeks after returning to work, Goodbar's knee pain returned. (See id. ¶ 37.) In February 2007, Goodbar had a second knee surgery and eventually returned to work. (See id. ¶¶ 38-39.) He was prescribed hydrocodone and advised to take it whenever he had pain in his knee. (See id. ¶¶ 40, 48.)

At approximately 11:30 p.m. on June 1, 2008, the knee on which Goodbar had two prior surgeries began causing him great pain and caused his leg to collapse while he was cutting aluminum sheets. (See id. ¶¶ 41-44.) He reported the injury to Mr. Clark[3] in Technicolor's Loss Prevention Department at 11:41 p.m., and he remained at work until his shift ended at 6:30 a.m. on June 2, 2008. (See id. ¶¶ 45-46.) When he arrived home, he took hydrocodone before going to bed, and he took more hydrocodone before going to work that evening. (See id. ¶ 47.) Around 1:00 or 2:00 a.m. on June 3, 2008, his pain became intense, causing him to go to the Loss Prevention Department, which sent him to the emergency room at Baptist East Hospital. (See id. ¶ 51.) The same day, Goodbar signed another copy of Technicolor's Substance Abuse Policy under which he agreed to be screened for drugs whenever he had an on-the-job accident or injury requiring medical attention. (See id. ¶¶ 25-26.)

---

[3] Clark's first name does not appear in the record before the Court.

On June 8, 2008, Goodbar returned to Technicolor, was assigned to perform light duty work, and was told that he was not allowed to take any pain medication while at work regardless of what doctors told him. (See id. ¶¶ 53-56.) He understood that Cole did not want him to come into work and fix heavy machinery while taking hydrocodone. (See id. ¶ 61.) His last day at work was June 18, 2008. (See id. ¶ 57, 64.)

Goodbar's June 1, 2008 injury was processed as a workers' compensation claim, and at some point an unknown female called and informed him that his workers' compensation claim had been denied because of pre-existing conditions.[4] (See id. ¶¶ 51-52.) After June 24, 2008, he hired an attorney to pursue his workers' compensation claim. (See id. ¶¶ 63, 65.)

Sue Bradford ("Bradford"), the Human Resources Manager at Technicolor, was notified of Goodbar's June 1, 2008 injury soon after it occurred. (See id. ¶¶ 22, 69.) Consistent with Technicolor's Substance Abuse Policy, Technicolor required and Goodbar took a drug screening test on June 3, 2008. (See id. ¶ 70.) Because of a delay at the hospital where Goodbar took the test, Bradford received the drug screen results several weeks later. (See id. ¶¶ 72, 81.) The test results revealed that Goodbar tested positive for opiates, and Goodbar "does not doubt

---

[4] The parties do not agree about when Goodbar was notified that his workers' compensation claim had been denied. (See Def.'s Statement of Facts ¶ 62; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 62, ECF No. 26-1.)

the accuracy of the drug test and admits that he took hydrocodone." (Id. ¶ 71.) Goodbar and Technicolor seem to agree that Goodbar did not notify those performing the drug test that he was taking any medication, but disagree about whether he was asked whether he had taken hydrocodone or any other drug before taking the test. (See id. ¶ 75; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 75, ECF No. 26-1.)

Bradford had sole responsibility and authority to review drug test results and determine whether employees had violated Technicolor's Substance Abuse Policy. (Def.'s Statement of Facts ¶ 76.) Based solely on the drug test results and Technicolor's zero tolerance practice when employees test positive, Bradford decided to terminate Goodbar's employment.[5] (See id. ¶¶ 78-79.) No other person made the decision to terminate Goodbar's employment or recommended his termination.

---

[5] Local Rule 7.2(d)(3) provides that parties opposing motions for summary judgment who dispute any of the material facts on which proponents have relied "shall respond to the proponent's numbered designations, using the corresponding serial numbering, both in the response and by attaching to the response the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue." W.D. Tenn. Civ. R. 7.2(d)(3). Here, Goodbar did not respond to Technicolor's statement of these facts other than stating "Disputed" and "Disputed. Need to see her declaration." (Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶¶ 78-79), although Technicolor cited and provided an affidavit by Bradford affirming these facts (Decl. of Sue Bradford ¶¶ 10-11, ECF No. 20-1). Goodbar has not cited or attached the precise portions of the record relied on to dispute Technicolor's material facts, which Local Rule 7.2(d)(3) requires. See W.D. Tenn. Civ. R. 7.2(d)(3). Therefore, the Court regards these factual assertions by Technicolor as admitted by Goodbar. See Akines v. Shelby Cnty. Gov't, 512 F. Supp. 2d 1138, 1147-48 (W.D. Tenn. 2007); see also George v. Vought Aircraft Indus., Inc., No. 3:08-0787, 2009 WL 5217002, at *4 n.2 (M.D. Tenn. Dec. 30, 2009) (applying similar local rule); Geesling v. Clay Cnty., No. 2:06-0056, 2007 WL 2509671, at *1 n.1 (M.D. Tenn. Aug. 30, 2007) (applying similar local rule).

(See id. ¶¶ 77, 80.) During Bradford's service at Technicolor, no employee was discharged for filing a workers' compensation claim.[6] (See id. ¶ 82.)

Around June 20, 2008, Shirley Warner ("Warner"), a Human Resources worker at Technicolor, called Goodbar to inform him that he was terminated because he had tested positive on his drug test for hydrocodone. (See id. ¶ 87.) Goodbar told Warner that he had a prescription for that medication, and Warner said she would investigate and let him know within a few days whether he could return to work. (See id. ¶¶ 89-90.) Around June 24, 2008, Warner called Goodbar and informed him that his employment was terminated because of the positive drug test. (See id. ¶ 91.)

Around the time Goodbar was terminated, he called Cole to explain that Technicolor was firing him for taking prescription medication. (See id. ¶ 58.) Cole said that he knew Goodbar took that medication and that "I told them what Mr. Goodbar does on his own time is none of my business." (Id. ¶ 59.)

At some point, an unidentified woman from Technicolor called Goodbar about his knee surgeries and stated, "I can't believe you haven't been fired for having surgery on my [sic]

---

[6] For the reason discussed in Footnote 5, Goodbar's response to this factual assertion, "Disputed," does not comply with Local Rule 7.2(d)(3). Therefore, this factual assertion is deemed admitted. See Akines, 512 F. Supp. 2d at 1147-48; see also George, 2009 WL 5217002, at *4 n.2; Geesling, 2007 WL 2509671, at *1 n.1.

knees."[7]    (Id. ¶¶ 92, 96.)    The caller did not say that she thought he was disabled.    (See id. ¶ 93.)    After the conversation ended, the caller mistakenly called him back.    (See id. ¶ 97.)    The caller thought she was speaking to someone else and said, "I can't believe Mr. Goodbar still works here after having two (2) surgeries."  (Id. ¶ 98.)  Goodbar then identified himself and the caller apologized and hung up.  (Id.)

The evidence Goodbar cites to support his claim that Technicolor regarded him as disabled consists of his two previous surgeries and the telephone conversations with the unknown caller he contends conveyed the message that Technicolor regarded him as disabled because of his "surgeries, having surgery and not being able to do all the time my job [sic] that is required of me because of my leg."  (Id. ¶ 99.)

After Goodbar had been terminated, Cole told him, "everything was fine until [he] hired an attorney and then HR and everything got ugly."[8]    (Id. ¶ 66.)    On July 10, 2008, Goodbar went to Technicolor to pick up his tools, and Cole again told him that he had been terminated because he had hired a lawyer.  (Id. ¶ 67.)  Cole's statements are the only evidence

---

[7] The record before the Court does not state when Goodbar received this call.
[8] The record before the Court does not state in further detail when Cole made this statement.

Goodbar has to support his claim that he was terminated for filing a workers' compensation claim.[9] (Id. ¶ 68.)

To the document in which Goodbar responded to Technicolor's Statement of Undisputed Material Facts, Goodbar has attached "Plaintiff's Statement of Additional Undisputed Material Facts." (Pl.'s Resp. to Def.'s Statement of Undisputed Facts 7.) "Neither the Federal Rules of Civil Procedure nor the Local Rules . . . provide for such a practice. As such, the Court will not consider the additional statement of facts for purposes of this Motion." Geeslin *ex rel.* Geeslin v. Bryant, No. 06-2768-STA, 2010 WL 2365329, at *2 (W.D. Tenn. June 9, 2010). Nevertheless, the facts in Plaintiff's Statement of Additional Undisputed Material Facts, which properly refer to evidence in the record, do not contradict the undisputed facts discussed in this Part. (See Pl.'s Resp. to Def.'s Statement of Undisputed Facts 7-8.)

## II. Jurisdiction and Choice of Law

Goodbar filed his Complaint against Technicolor in the Circuit Court of Tennessee for the 30th Judicial District at Memphis, Tennessee. (Compl.) Technicolor removed the case to this Court, alleging that this Court has diversity jurisdiction.

---

[9] For the reason discussed in Footnote 5, Goodbar's response to this factual assertion of "Disputed, but not sure why yet" does not comply with Local Rule 7.2(d)(3). Therefore, this factual assertion is deemed admitted. See Akines, 512 F. Supp. 2d at 1147-48; see also George, 2009 WL 5217002, at *4 n.2; Geesling, 2007 WL 2509671, at *1 n.1.

(See Notice of Removal ¶¶ 5-6, ECF No. 1.) Goodbar is an Arkansas citizen, and Technicolor is a Delaware corporation with its principal place of business in California. (See id. at ¶¶ 2-3.) Thus, complete diversity exists. See V&M Star, LP v. Centimark Corp., 596 F.3d 354, 355 (6th Cir. 2010) (citation omitted). Because Goodbar seeks $300,000 in compensatory damages, front pay and benefits until the time of reinstatement, punitive damages, attorney's fees, and costs (Compl. 7), more than $75,000 is in controversy, and the amount-in-controversy requirement is satisfied. See 28 U.S.C. § 1332(a); Ozormoor v. T-Mobile USA, Inc., 354 F. App'x 972, 973-74 (6th Cir. 2009); Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 573 (6th Cir. 2001). Therefore, this Court has diversity jurisdiction. See 28 U.S.C. § 1332(a). Because it has original jurisdiction based on diversity of citizenship, removal was proper. See 28 U.S.C. § 1441(a); Lincoln Prop. Co. v. Roche, 546 U.S. 81, 89-90 (2005).

In a diversity action, state substantive law governs. See Brocklehurst v. PPG Indus., Inc., 123 F.3d 890, 894 (6th Cir. 1997) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). A federal district court is required to apply the choice-of-law rules of the state in which it sits. See Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496 (1941); Montgomery v. Wyeth, 580 F.3d 455, 459 (6th Cir. 2009) (citation

omitted).  For tort claims, Tennessee follows the "most significant relationship" approach, which provides that "the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation."  Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992).

Here, plaintiff was employed in Tennessee.  (Compl. ¶¶ 2-3.)  He invokes Tennessee law, and both parties assume that Tennessee law applies.  (See, e.g., Def. Technicolor Videocassette of Michigan, Inc.'s Mem. of Law 8, 10-11, ECF No. 22-2 ("Def.'s Mem."); Pl.'s Resp. 1, 7.)  Neither alleges that another state has a more significant relationship to the litigation.  Therefore, the Court will apply Tennessee law to Goodbar's claims.  See In re Korean Air Lines Disaster of Sept. 1, 1983, 932 F.2d 1475, 1495 (D.C. Cir. 1991).

### III. Standard of Review

Under Federal Rule of Civil Procedure 56, the party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion."  Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986) (citations omitted).  The moving party can meet this burden by pointing out to the court that the

respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of her case.  See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the respondent must set forth specific facts showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  See id.  The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  One may not oppose a properly supported summary judgment motion by mere reliance on the pleadings.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Instead, the nonmovant must present "concrete evidence supporting [his] claims."  Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989) (citations omitted).  The district court does not have the duty to search the record for that evidence.  See InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989).  The nonmovant has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in his favor.  See id.  "Summary

judgment is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

## IV.  Analysis

Goodbar alleges that Technicolor is liable for (1) terminating his employment because Technicolor regarded him as disabled, in violation of the THRA and TDA, and, in the alternative, for (2) retaliatory discharge for filing a workers' compensation claim, in violation of Tennessee common law. (See Pl.'s Resp. 1; Compl. ¶¶ 1, 13.) Technicolor argues that it is entitled to summary judgment on Goodbar's claims. (Def.'s Mot. 1.)

### A.  Disability Discrimination

The TDA prohibits private employers from discriminating against employees "based solely upon any physical, mental or visual disability of the applicant, unless such disability to some degree prevents the applicant from performing the duties required by the employment sought or impairs the performance of the work involved." Bennett v. Nissan N. Am., Inc., 315 S.W.3d 832, 841 (Tenn. Ct. App. 2009) (quoting Tenn. Code Ann. § 8-50-103(b)). The TDA embodies the THRA's rights and definitions.

Id. (citing Barnes v. Goodyear Tire & Rubber Co., 48 S.W.3d 698, 705 (Tenn. 2000), abrogated on different grounds by Gossett v. Tractor Supply Co., 320 S.W.3d 777 (Tenn. 2010)).  There is no separate cause of action for disability discrimination under the THRA.  Whited v. Cmty. Bank of the Cumberlands, Inc., No. 2-08-0061, 2010 WL 605280, at *8 (M.D. Tenn. Feb. 18, 2010); see Perlberg v. Brencor Asset Mgmt., Inc., 63 S.W.3d 390, 394 (Tenn. Ct. App. 2001) ("The employment-related part of the THRA does not expressly apply to claims of discrimination based upon a disability.  Instead, an employee is protected from an adverse employment decision based upon a disability under the [TDA] . . . .").  Therefore, Goodbar's THRA claim must be treated as part of his TDA claim.  See Adams v. TRW Auto. U.S. LLC, No. 3:03-1240, 2005 WL 1862302, at *18 (M.D. Tenn. July 22, 2005) (stating that "claims made under the THRA for employment discrimination based on disability have been treated as equivalent to claims under the [TDA]" and reading a THRA claim for disability discrimination as alleging disability discrimination under the Tennessee Handicap Act, the prior name of the TDA).

"[T]here are three elements to a claim for discrimination under the TDA; a claimant must show: '(1) that the individual was qualified for the position; (2) that the individual was disabled; and (3) that the individual suffered an adverse

employment action because of that disability.'" *Bennett*, 315 S.W.3d at 841 (quoting *Barnes*, 48 S.W.3d at 705). To establish the third element, a plaintiff must "establish that a prohibited motivation made a difference in the adverse employment decision." *Oates v. Chattanooga Publ'g Co.*, 205 S.W.3d 418, 424 (Tenn. Ct. App. 2006) (quoting *Barnes*, 48 S.W.3d at 708). Direct or indirect evidence of disability discrimination can satisfy that burden. *Bennett*, 315 S.W.3d at 841 (citing *Barnes*, 48 S.W.3d at 710).

The threshold issue in TDA claims is whether the plaintiff is "disabled." *Id.* at 841-42 (citations omitted). Tennessee defines "disability" with respect to a person as (1) "[a] physical or mental impairment that substantially limits one (1) or more of such person's major life activities," (2) "[a] record of having such an impairment," or (3) "[b]eing regarded as having such an impairment." Tenn. Code Ann. § 4-21-102(3)(A); *Bennett*, 315 S.W.3d at 842. Therefore, there are three ways to meet the statutory definition of "disabled." *Bennett*, 315 S.W.3d at 842. Goodbar relies on his having been regarded as disabled. (*See* Pl.'s Resp. 1, 6.) Interpreting Tennessee law, the Tennessee Supreme Court has stated:

> [T]he plaintiff may be regarded as disabled if the defendant treated him as if his impairment substantially limited a major life activity. Major life activities include communicating by speech and the ability to report for work. An impairment that

> may disqualify one from working at a job of choice
> does not limit a major life activity.

Barnes, 48 S.W.3d at 706 (citations omitted); accord Bennett, 315 S.W.3d at 846-47.

Because of the similarity between the TDA and the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 et seq., Tennessee courts regard federal courts' interpretations of the ADA as persuasive authority in interpreting "disability" under Tennessee law. See, e.g., Bennett, 315 S.W.3d at 846-47 (stating that Tennessee courts have recognized a principle stated by the United States Supreme Court in interpreting the ADA); Sasser v. Quebecor Printing (USA) Corp., 159 S.W.3d 579, 584 (Tenn. Ct. App. 2004) ("A claim brought under the [TDA] is analyzed under the same principles as those utilized for the Americans with Disabilities Act ('ADA').") (citation omitted).

Here, two independent reasons require granting summary judgment on Goodbar's disability discrimination claim. The first is based on a strict application of Local Rule 7.2(d)(3) and the federal summary judgment standard. In Technicolor's Statement of Undisputed Material Facts, Technicolor states that Sue Bradford ("Bradford"), the Human Resources Manager at Technicolor, was notified of Goodbar's June 1, 2008 injury soon after it had occurred, required Goodbar to take a drug screening test on June 3, 2008, and had sole responsibility and authority

to review the test results and determine whether it appeared that Goodbar had violated Technicolor's Substance Abuse Policy. (See Def.'s Statement of Facts ¶¶ 22, 69-70, 76.) Goodbar does not dispute these facts. (See Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶¶ 22, 69-70, 76.) The parties also agree that the decision about whether to terminate Goodbar's employment was Bradford's alone and that no other person recommended his termination. (See Def.'s Statement of Facts ¶¶ 77, 80; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 77, 80.)

The crux of this case is why Technicolor terminated Goodbar's employment. Technicolor states that, based solely on the drug test results and Technicolor's zero tolerance practice as to employees testing positive, Bradford decided to terminate Goodbar's employment. (See Def.'s Statement of Facts ¶¶ 78-79.) To dispute these factual assertions, Local Rule 7.2(d)(3) requires Goodbar to respond "by attaching to the response the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue." W.D. Tenn. Civ. R. 7.2(d)(3). Because Goodbar responded by stating "Disputed. Need to see her declaration." and "Disputed" without more (Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶¶ 78-79), Goodbar has not complied with Local Rule 7.2(d)(3). Therefore, Technicolor's

factual assertions in these paragraphs are admitted by Goodbar for purposes of Technicolor's summary judgment motion. See Akines, 512 F. Supp. 2d at 1147-48; see also George, 2009 WL 5217002, at *4 n.2; Geesling, 2007 WL 2509671, at *1 n.1.

Because merely alleging a factual dispute will not defeat a properly supported motion for summary judgment, the federal summary judgment standard demands the same result. See Jeff Miller Stables, 573 F.3d at 294 ("By its very terms, this standard [for summary judgment] provides that the existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . .") (quoting Anderson, 477 U.S. at 247-48). It is tantamount to resting on the pleadings, which will not do. See Moldowan v. City of Warren, 578 F.3d 351, 374 (6th Cir. 2009) ("The non-moving party also may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial.") (citations omitted); Skousen v. Brighton High Sch., 305 F.3d 520, 527 (6th Cir. 2002) (stating that, in responding to a properly-supported motion for summary judgment, "the adverse party cannot rest solely on the allegations made in her pleadings").

To survive summary judgment, Goodbar must produce concrete evidence sufficient to create a genuine issue of material fact

about whether Technicolor terminated his employment because of his disability. See Anderson, 477 U.S. at 248; Cloverdale Equip. Co., 869 F.2d at 937, 939; Bennett, 315 S.W.3d at 841. Because, by failing to comply with the Local Rules, Goodbar admits that Bradford terminated his employment solely because of the drug test results and that no other person made the decision to terminate his employment or recommended its termination, Goodbar admits that Technicolor terminated his employment solely because of his test results. (See Def.'s Statement of Facts ¶¶ 77-80.) No genuine issue of material fact exists about whether Goodbar suffered an adverse employment action because of his disability, a required element to establish a TDA violation. See Bennett, 315 S.W.3d at 841; Oates, 205 S.W.3d at 424. Therefore, Technicolor is entitled to summary judgment on Goodbar's disability discrimination claim. See Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co., 598 F.3d 257, 264 (6th Cir. 2010) (citing Fed. R. Civ. P. 56(c)).

Even if the Court were to disregard Goodbar's admission about Technicolor's basis for terminating his employment, a second reason would require granting summary judgment on his disability discrimination claim: Goodbar's lack of any evidence to suggest a causal connection between Technicolor's alleged perception of him as disabled and the termination of his employment.

Goodbar has sufficient evidence to create a genuine issue of material fact about the threshold issue of whether Technicolor regarded him as disabled. See Bennett, 315 S.W.3d at 841-42. Goodbar alleges that an unidentified woman from Technicolor called him about his knee surgeries and stated, "I can't believe you haven't been fired for having surgery on my [sic] knees." (Def.'s Statement of Facts ¶¶ 92, 96; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶¶ 92, 96.) The caller did not say that she thought he was disabled. (See Def.'s Statement of Facts ¶ 93; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 93.) After the conversation ended, the caller mistakenly called him back. (See Def.'s Statement of Facts ¶ 97; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 97.) The caller thought she was speaking to someone else and said, "I can't believe Mr. Goodbar still works here after having two (2) surgeries." (See Def.'s Statement of Facts ¶ 98; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 98.) Goodbar then identified himself and the caller apologized and hung up. (See Def.'s Statement of Facts ¶ 98; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 98.)

The only evidence Goodbar cites to support his claim that Technicolor regarded him as disabled consists of his two previous surgeries and the telephone conversations with the unknown caller he contends conveyed the message that Technicolor

regarded him as disabled because of his "surgeries, having surgery and not being able to do all the time my job [sic] that is required of me because of my leg." (See Def.'s Statement of Facts ¶ 99; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 99.) Technicolor contends that these facts are insufficient to establish that it regarded Goodbar as disabled. (See Def.'s Mem. 21.)

Contrary to Technicolor's assertion that the unidentified caller's statements cannot be imputed to it (id.), they are admissible evidence against Technicolor as statements "by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship," Fed. R. Evid. 801(d)(2)(D). That the caller's name is unknown does not matter given the statements' context, calls from Technicolor about Goodbar's knee surgeries and their effect on his work. See EEOC v. LA Weight Loss, 509 F. Supp. 2d 527, 533-34 (D. Md. 2007); Kaiser Permanente Emps. Pension Plan, 849 F. Supp. 692, 699 n.3 (N.D. Cal. 1994). These statements are admissible against Technicolor. See Blair v. Henry Filters, Inc., 505 F.3d 517, 527 (6th Cir. 2007), abrogated on different grounds by Geiger v. Tower Auto., 579 F.3d 6141 (6th Cir. 2009); Wessel v. Enersys, Inc., No. 03-4089-SAC, 2005 WL 1799244, at *4 (D. Kan. June 28, 2005).

A reasonable jury could consider the unknown caller's statements expressing surprise that Technicolor had not terminated Goodbar's employment because of his surgeries as evidence that Technicolor regarded Goodbar as unable to serve in any position because of his medical condition. (See Def.'s Statement of Facts ¶¶ 92, 96-98; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶¶ 92, 96-98.) That is sufficient to create a genuine issue of material fact about whether Technicolor treated Goodbar as if his impairment substantially limited the major life activity of working. See Barnes, 48 S.W.3d at 706; Bennett, 315 S.W.3d at 844, 852; see also Wysong v. Dow Chem. Co., 503 F.3d 441, 452-53 (6th Cir. 2007) (concluding that a reasonable fact finder could conclude that an employer regarded an employee as disabled where the employer believed the employee was unable to work anywhere at its plant); Chandler v. Specialty Tires of Am. (Tenn.), Inc., 134 F. App'x 921, 922-23, 925-26 (6th Cir. 2005) (construing Tennessee law and concluding that an employer was not entitled to summary judgment where a supervisor testified that he terminated the plaintiff's employment because the plaintiff's attempted suicide convinced him that she was irresponsible and incapable of performing any work for the employer).

Nevertheless, a reasonable jury could not conclude that Technicolor terminated Goodbar's employment because of his

disability, an essential element to prevail under the TDA. See Bennett, 315 S.W.3d at 841; Oates, 205 S.W.3d at 424. Goodbar admits that Bradford alone decided to terminate his employment and that no other person recommended termination. (See Def.'s Statement of Facts ¶¶ 77, 80; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶¶ 77, 80.) Having made these admissions and not offered any evidence that Bradford was the caller who made the statements expressing surprise that he had not been fired, he has not offered evidence that the caller played any role in Bradford's decision. He also has not presented evidence that Bradford considered his disability in deciding to terminate his employment. Therefore, he has not met his burden of offering concrete evidence to show that Technicolor terminated his employment because of his disability, as required to survive summary judgment. See Anderson, 477 U.S. at 248; Cloverdale Equip. Co., 869 F.2d at 937, 939; Bennett, 315 S.W.3d at 841. Technicolor is entitled to summary judgment on Goodbar's disability discrimination claim. See Travelers Prop. Cas. Co. of Am., 598 F.3d at 264.

**B. Retaliatory Discharge for Filing Workers' Compensation Claim**

A plaintiff must prove four elements to prevail on a cause of action for retaliatory discharge for asserting a workers' compensation claim:

> (1) The plaintiff was an employee of the defendant at the time of the injury; (2) the plaintiff made a claim against the defendant for workers' compensation benefits; (3) the defendant terminated the plaintiff's employment; and (4) the claim for workers' compensation benefits was a substantial factor in the employer's motivation to terminate the employee's employment.

Anderson v. Standard Register Co., 857 S.W.2d 555, 558 (Tenn. 1993); see also Crews v. Buckman Labs. Int'l, Inc., 78 S.W.3d 852, 862 (Tenn. 2002) (stating the elements of a common law retaliatory discharge claim).

To satisfy the fourth element, the plaintiff must establish "a causal relationship between the claim for workers' compensation benefits and the termination of employment." Anderson, 857 S.W.2d at 558. That relationship must be "an important or significant motivating factor for the discharge." Kinsler v. Berkline, LLC, 320 S.W.3d 796, 800 (Tenn. 2010) (citing Anderson, 857 S.W.2d at 558). "Proof of discharge without evidence of a causal relationship between the claim for benefits and the discharge does not present an issue for the jury." Anderson, 857 S.W.2d at 558-59. Temporal proximity between an employee's assertion of a workers' compensation claim and termination of his employment is not sufficient by itself to raise an inference of retaliation. Craig v. Porter Cable/Delta, No. 1:05-1018-T-An, 2006 WL 1006857, at *8 (W.D. Tenn. Apr. 17,

2006) (citing <u>Conatser v. Clarksville Coca-Cola Bottling Co.</u>, 920 S.W.2d 646, 648 (Tenn. 1995)).

Here, Technicolor is entitled to summary judgment on Goodbar's retaliatory discharge claim for two independent reasons. First, for the reasons discussed above, Goodbar's failure to comply with Local Rule 7.2(d)(3) and the federal summary judgment standard results in the admission of facts fatal to Goodbar's claim. Technicolor states that, based solely on the drug test results and Technicolor's zero tolerance practice as to employees testing positive, Bradford decided to terminate Goodbar's employment. (<u>See</u> Def.'s Statement of Facts ¶¶ 78-79.) Technicolor also states that, during Bradford's service at Technicolor, no employee was ever discharged for filing a workers' compensation claim. (<u>See</u> <u>id.</u> ¶ 82.) That period includes the date on which Technicolor terminated Goodbar's employment. (<u>See</u> <u>id.</u> ¶¶ 22, 87, 91.) Therefore, according to Technicolor's Statement of Undisputed Material Facts, Technicolor's sole reason for terminating Goodbar had nothing to do with his decision to seek workers' compensation. (<u>See</u> <u>id.</u> ¶¶ 22, 78-79, 82, 87, 91.)

To dispute this factual assertion, Local Rule 7.2(d)(3) requires Goodbar to respond "by attaching to the response the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material

facts are at issue." W.D. Tenn. Civ. R. 7.2(d)(3). Goodbar has
not done so. (See Pl.'s Resp. to Def.'s Statement of Undisputed
Facts ¶¶ 78-79, 82.) Therefore, Technicolor's factual
assertions in these paragraphs are admitted by Goodbar for
purposes of Technicolor's summary judgment motion. See Akines,
512 F. Supp. 2d at 1147-48; see also George, 2009 WL 5217002, at
*4 n.2; Geesling, 2007 WL 2509671, at *1 n.1. The federal
summary judgment standard requires the same result. See
Moldowan, 578 F.3d at 374; Jeff Miller Stables, 573 F.3d at 294;
Skousen, 305 F.3d at 527.

To survive summary judgment, Goodbar must produce concrete
evidence sufficient to create a genuine issue of material fact
about whether his filing a workers' compensation claim was "an
important or significant motivating factor for the discharge."
See Anderson, 477 U.S. at 248; Cloverdale Equip. Co., 869 F.2d
at 937, 939; Kinsler, 320 S.W.3d at 800; Anderson, 857 S.W.2d at
558. Because Goodbar has admitted that Technicolor's sole
reason for terminating his employment was unrelated to his
decision to seek workers' compensation, Goodbar cannot
demonstrate a genuine issue of material fact about whether
Technicolor terminated his employment in retaliation for filing
a workers' compensation claim, an essential element of a
retaliatory discharge cause of action. See Kinsler, 320 S.W.3d
at 800; Anderson, 857 S.W.2d at 558. Therefore, Technicolor is

entitled to summary judgment on Goodbar's retaliatory discharge claim.  See Travelers Prop. Cas. Co. of Am., 598 F.3d at 264.

Even if the Court were to disregard Goodbar's admission, a second reason would require granting summary judgment on Goodbar's retaliatory discharge claim: Goodbar's lack of any evidence to show "a causal relationship between the claim for workers' compensation benefits and the termination of employment."  Anderson, 857 S.W.2d at 558.  Goodbar's only evidence that he was terminated for filing a workers' compensation claim is that, after his termination, Cole, his immediate supervisor, told him at some point, "everything was fine until [he] hired an attorney and then HR and everything got ugly," and told him on July 10, 2008 that he was terminated because he had hired a lawyer. (Def.'s Statement of Facts ¶¶ 9, 66-68.)  Although Goodbar denies that this is the only evidence to support his retaliatory discharge claim, his response of "Disputed, but not sure why yet" (Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 68) is not sufficient to create a genuine issue of material fact about the essential element of causation.  See Cloverdale Equip. Co., 869 F.2d at 937, 939; Kinsler, 320 S.W.3d at 800; Anderson, 857 S.W.2d at 558.

The parties agree that Cole played no role in the decision to terminate Goodbar's employment. (See Def.'s Statement of Facts ¶¶ 77, 80; Pl.'s Resp. to Def.'s Statement of Undisputed

Facts ¶¶ 77, 80.) Goodbar has not presented any concrete evidence that he had hired an attorney before Technicolor terminated his employment. (See Def.'s Statement of Facts ¶¶ 65, 87, 91; Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶¶ 65, 87, 91.) Indeed, the undisputed facts demonstrate that he was first terminated around June 20, 2008, that his termination was reaffirmed around June 24, 2008, and that he hired an attorney to pursue his workers' compensation claim after June 24, 2008. Accepting Goodbar's evidence as true, the hiring of an attorney to seek workers' compensation could not have played a role in Technicolor's decision. Therefore, Technicolor is entitled to summary judgment. See Anderson, 477 U.S. at 248; see also Davis v. Nissan N. Am., Inc., No. M2009-02579-COA-R3-CV, 2010 WL 2787830, at *12 (Tenn. Ct. App. July 13, 2010); Birchett v. Nashville Co., No. M1999-00207-COA-R3-CV, 2000 WL 640895, at *2-4 (Tenn. Ct. App. May 19, 2000).

## V.   Conclusion

For the foregoing reasons, Technicolor's Motion for Summary Judgment on all of Goodbar's claims is GRANTED.

So ordered this 30th day of December, 2010.


s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE